UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| AARON BENNETT,<br><br>Plaintiff,<br><br>-against-<br><br>THE CITY OF NEW YORK; NEW YORK CITY POLICE DEPARTMENT OFFICERS (P.O.) BRIAN BENVENUTO, P.O. CRAIG SIKORSKI, P.O. WILLIAM MORRIS, P.O. BRIDGET SPILLANE, P.O. PETER PLAY, P.O. ZEKE BUTTERMARK, P.O. DEMARRIOS KOLA, PO. JOHN BECCARA, P.O. JOHN and JANE DOES.<br><br>Defendants. | COMPLAINT<br><br>20-CV-1317<br><br>**JURY TRIAL DEMANDED** |

---

**PRELIMINARY STATEMENT**

1. Plaintiff Aaron Bennett, a 34-year-old man confined to a wheelchair, was arrested in front of 150 West Fourth Street in Manhattan on March 11, 2017. During pre-arraignment detention, Bennett was alternately handcuffed to bench and unable to move his wheelchair, dispossessed of his wheelchair entirely and either left on the filthy, urine-soaked floor of a cell or transported, unsecured, in vehicles not accessible for wheelchairs. Mr. Bennett sustained a serious injury to his lower back when individual defendants dropped plaintiff at least once while transporting him without his wheelchair during his pre-arraignment detention.

2. Plaintiff brings this action alleging violations of the Americans with Disabilities Act of 1990, amended and codified as 42 U.S.C. § 12132, *et seq.*, in depriving him of his wheelchair, failing to provide reasonable accommodation, and discriminating against him because of his disability, the Rehabilitation Act of 1973, 29 U.S.C. § 701, *et seq.*, 28 C.F.R. Part 35, and the

1

Civil Rights Act of 1871, amended and codified as 42 U.S.C. § 1983, and New York City Human Rights Law amended and codified as N.Y.C. Admin. Code § 8-101 *et seq.*, for subjecting him to unconstitutional, discriminatory, and unlawful conditions of confinement, and the deprivation of rights accorded by the Fourth and Fourteenth Amendments to the United States Constitution.

3. This complaint seeks compensatory damages, punitive damages and attorneys' fees.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over federal claims pursuant to 28 U.S.C. §§ 1331, 1343(a)(3-4). This action is brought pursuant to the Americans with Disabilities Act of 1990, amended and codified as 42 U.S.C. § 12132, *et seq.* ("ADA"); Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 701, *et seq.* ("Rehabilitation Act"); 28 C.F.R. Part 35; the Civil Rights Act of 1871, 42 U.S.C. § 1983, for violations of the Fourth and Fourteenth Amendments to the Constitution of the United States; and New York City Human Rights Law amended and codified as N.Y.C. Admin. Code § 8-101 *et seq.*

5. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) in that plaintiff resides in Kings County in the State of New York, within the confines of this judicial district.

6. An award of costs and attorneys' fees is authorized pursuant to 42 U.S.C. §§ 1988 and 12205.

## JURY TRIAL

7. Pursuant to Fed. R. Civ. P. 38, plaintiff demands a jury trial.

## PARTIES

Civil Rights Act of 1871, amended and codified as 42 U.S.C. § 1983, and New York City Human Rights Law amended and codified as N.Y.C. Admin. Code § 8-101 *et seq.*, for subjecting him to unconstitutional, discriminatory, and unlawful conditions of confinement, and the deprivation of rights accorded by the Fourth and Fourteenth Amendments to the United States Constitution.

3. This complaint seeks compensatory damages, punitive damages and attorneys' fees.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over federal claims pursuant to 28 U.S.C. §§ 1331, 1343(a)(3-4). This action is brought pursuant to the Americans with Disabilities Act of 1990, amended and codified as 42 U.S.C. § 12132, *et seq.* ("ADA"); Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 701, *et seq.* ("Rehabilitation Act"); 28 C.F.R. Part 35; the Civil Rights Act of 1871, 42 U.S.C. § 1983, for violations of the Fourth and Fourteenth Amendments to the Constitution of the United States; and New York City Human Rights Law amended and codified as N.Y.C. Admin. Code § 8-101 *et seq.*

5. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) in that plaintiff resides in Kings County in the State of New York, within the confines of this judicial district.

6. An award of costs and attorneys' fees is authorized pursuant to 42 U.S.C. §§ 1988 and 12205.

## JURY TRIAL

7. Pursuant to Fed. R. Civ. P. 38, plaintiff demands a jury trial.

## PARTIES

8. Plaintiff Aaron Bennett ("Mr. Bennett") was at all times relevant to this action a resident of the County of Kings in the State of New York. Mr. Bennett has been paraplegic since 2004, when he sustained a gunshot wound to his lower spine. The resulting paralysis renders him wheelchair-bound. On the basis of these conditions, Mr. Bennett is and was at all times relevant to this action a qualified individual within the meaning of the ADA and the Rehabilitation Act and New York City Human Rights Law.

9. Defendant City of New York ("City") is a municipal corporation organized under the laws of the State of New York. It is authorized by law to maintain a correction department ("DOC") which acts as its agent in the area of corrections for which it is ultimately responsible. It is also authorized by law to maintain a police department ("NYPD") which acts as its agent in the area of law enforcement and for which it is ultimately responsible. Defendant City assumes the risks incidental to the maintenance of the DOC and NYPD and the employment of corrections/police officers as said risks attach to the public consumers of the services provided by the DOC/NYPD.

10. Defendant City operates a number of detention jails, including NYPD 6th Precinct at 233 W.10th Street, New York, NY 10014 and other facilities where Mr. Bennett was held for many hours on March 11, 2017. At all relevant times hereto, the New York City Department of City Administrative Services ("DCAS") owned or managed the building located at NYPD 6th Precinct at 233 W.10th Street, New York, NY 10014. Through the DCAS, the City manages the daily maintenance and operation and oversees any repairs to these buildings and therefore had a duty to the facilities enabled compliance with federal disability law and to ensure the facilities comply with Federal Law.

11. Upon information and belief, the City operates and manages the custody of detainees held at the NYPD 6th Precinct in Manhattan and other facilities, receives federal funding for the same, and through its senior officials at the central office, in each facility, and in its specialized units, promulgates and implements policies, including those with respect to access to medical and other program services mandated by law. Defendant City, and through its agencies including the NYPD, DOC, and DCAS, promulgates and implements policies, including those with respect to compliance with federal, state and local disability laws, reporting, and investigation of compliance by staff and of facility conditions, and access to medical and other program services mandated by local law and court orders. In addition, senior officials of the City are aware of and tolerate certain practices by subordinate employees in the jails and other facilities, including those that are inconsistent with formal policy. These practices, because they are widespread, long-standing, and deeply embedded in the culture of the City, constitute unwritten City policies or customs. Defendant City is also responsible for the appointment, training, supervision, and conduct of all City personnel, including the individual defendants referenced herein.

12. Defendant City operates and maintains a fleet of vehicles, including patrol cars and vans that are routinely used to transport arrestees during their pre-arraignment detention. At all relevant times hereto, the New York City Department of City Administrative Services ("DCAS") owned and maintained the vehicles in which Mr. Bennett was transported on March 11, 2017 while he was in NYPD custody. Through the DCAS, the City manages the daily maintenance and operation and oversees any maintenance and repairs to these vehicles and therefore had a duty to the vehicles enabled compliance with federal disability law and to ensure the facilities comply with Federal Law.

13. Individual Defendants BENVENUTO, BECCORA, SIKORSKI, MORRIS, SPILLANE, PLAY, BUTTERMARK, KOLA, AND JOHN and JANE DOES are and were at all times relevant herein, officers, employees and agents of Defendant City. Individual Defendants BENVENUTO, BECCORA, SIKORSKI, MORRIS, SPILLANE, PLAY, BUTTERMARK, KOLA, AND JOHN and JANE DOES acted intentionally, recklessly, with malice, and in gross disregard of Mr. Bennett's rights, and they are being sued herein in their individual capacities. Defendants BENVENUTO, BECCORA, SIKORSKI, MORRIS, SPILLANE, PLAY, BUTTERMARK, KOLA, AND JOHN and JANE DOES are hereinafter referred to as the "individual defendants."

14. At all times relevant herein, the individual defendants were employees or agents of Defendant City and were acting under color of state law in the course and scope of their duties and functions as agents, servants, and employees of the City and otherwise performed and engaged in conduct incidental to their lawful functions in the course of their duties. They were acting for and on behalf of the City at all times relevant herein, with the power and authority vested in them as agents and employees of the City and incidental to their duties as agents and employees of the City.

15. At all relevant times, the defendants were engaged in a joint venture, assisting each other in performing the various actions described herein and lending their physical presence and support and the authority of their offices to one another.

16. The true names and shield numbers of defendant John and Jane Does are not currently known to Mr. Bennett. However, John and Jane Doe defendants were employees or agents of the defendant City, on the date of the incident, March 11, 2017. Accordingly, they may be entitled to representation in this action by the New York City Law Department ("Law Department")

5

upon their request, pursuant to New York State General Municipal Law § 50-k. The Law Department, then, is hereby put on notice (a) that Mr. Bennett intends to name said officers as defendants in an amended pleading once their true names and shield numbers become known and (b) that the Law Department should immediately begin preparing their defense(s) in this action.

## STATEMENT OF FACTS

17. At the time of this incident, plaintiff Mr. Bennett was a thirty-four (34) year old man with a disability as defined under the ADA. Mr. Bennett has been wheelchair bound since 2004 due to his lower spine, paralyzing his lower limbs.

18. On March 11, 2017 at or about 2:47 a.m., Mr. Bennett was arrested in front of 150 W. 4th Street in Manhattan by officers of the NYPD.

19. Mr. Bennett was in the custody of the City of New York and individual defendants from the time of his arrest until his arraignment, during which time Mr. Bennett was at various times handcuffed to a bench while in his wheelchair, dispossessed of his wheelchair, and left to lie unable to move in a filthy urine-soaked holding cell

20. During this same period, Defendants City and individual defendants transported plaintiff to numerous locations, including but not limited to the NYPD 6th Precinct stationhouse and Manhattan Central Booking, in vehicles that were not wheelchair accessible, and he was transported unsecured and handcuffed in the back of a van. Individual defendants dropped Mr. Bennett on at least one occasion while lifting Mr. Bennett into a transport van that was not accessible to wheelchair users.

21. For the duration of Mr. Bennett's detention, the defendants failed to provide Mr. Bennett any accommodation for safely entering, exiting and riding in Defendant City vehicles in a wheelchair.

22. Defendant City and the individual defendants have a duty to comply with 28 Code of Federal Regulations Section 35.152 "Jails, Detention and Correctional Facilities, and community correctional Facilities." This section applies to public entities that are responsible for the operation or management of adult … jails, detention and correctional facilities … either directly or through contractual, licensing or other arrangements with public or private entities, in whole or in part, including private correctional facilities."

    a. Section 35.152 provides that, "public entities shall implement reasonable policies, including physical modifications to additional cells in accordance with the 2010 Standards, so as to ensure that each inmate with a disability … is housed in a cell with the accessible elements necessary to afford the inmate access to safe, appropriate housing.

    b. Section 35.152 additionally provides that, "Public entities shall ensure that qualified inmates or detainees with disabilities shall not, because a facility is inaccessible to or unusable by individuals with disabilities, be excluded from participation in, or be denied the benefits of, the services, programs, or activities of a public entity."

23. Upon information and belief, during the time Mr. Bennett was detained, defendants failed to conduct any cleaning or sanitation of the cell or its floor.

24. Defendants deprived Mr. Bennett of any accommodation of his disability for the duration of his detention and subjected him to atypical conditions of confinement in that he was deprived of his wheelchair and food for long periods during his confinement, and transported in vehicles

7

that were not wheelchair accessible, creating unnecessary risk of bodily harm, which was realized when individual defendants dropped Mr. Bennett while lifting him into a transport van.

25. Mr. Bennett sustained physical injuries due to defendants' actions and omissions, and due to Defendants' decision to deprive Mr. Bennett of his wheelchair and to transport him in vehicles that were not wheelchair accessible.

26. As a result of defendants' acts and omissions, Mr. Bennett sustained serious injuries to his physical and emotional well-being.

## FIRST CAUSE OF ACTION
## PURSUANT TO 42 U.S.C. § 12131 *et al.*
## and 29 U.S.C. § 794
## AMERICANS WITH DISABILITIES ACT AND REHABILITATION ACT
### *Against Defendant City*

27. Mr. Bennett repeats and re-alleges each of the above paragraphs with the same force as if set forth herein.

28. By depriving Mr. Bennett of his wheelchair and leaving him on the floor of a filthy cell for many hours with limited access to a restroom; and failing to provide reasonable accommodation to allow Mr. Bennett to be safely transported in Defendant City's vehicles during his detention; the defendants deprived Mr. Bennett of his rights guaranteed by the ADA the Rehabilitation Act (collectively referred to as the disability statutes), federal regulation applicable to the confinement of individuals with disabilities, and New York City Human Rights Law.

29. By reason of these acts and omissions, Mr. Bennett endured substantial physical and emotional injuries, had his liberty unnecessarily restricted, and was otherwise damaged and injured.

## SECOND CAUSE OF ACTION
## PURSUANT TO 42 U.S.C. § 1983
## DEPRIVATION OF FOURTH AND FOURTEENTH AMENDMENT RIGHTS
## UNDER THE UNITED STATES CONSTITUTION
*Against Defendant City and the Individual Defendants*

30. Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

31. By the acts alleged herein, the individual defendants, acting under color of state law and within the scope of their employment, deprived plaintiff of rights, remedies, privileges and immunities guaranteed to every citizen of the United States, and/or failed to intervene to prevent such deprivations, in violation of rights guaranteed by the Fourth and Fourteenth Amendments of the United States Constitution and 42 U.S.C. § 1983, including his right to be free from deprivation of liberty and excessive punishment without due process of law; to be free from unconstitutional conditions of confinement and objectively unreasonable conditions; and to be free from disparate and inhumane punishment.

32. Despite having been made aware of the unconstitutional conditions of vehicles used to transport arrestees with mobility impairments and of the 6th Precinct detention cells and other facilities, Defendant City and other municipal policymakers and supervisory personnel failed to adequately train, supervise, monitor and discipline members of the NYPD, DOC, and DCAS and other municipal personnel, who contribute to the unconstitutional conditions described herein.

33. As a direct and proximate result of the misconduct described above, plaintiff has suffered injury and damages including, *inter alia*, physical and mental pain, suffering and mental anguish.

## THIRD CLAIM
## *MONELL* CLAIM AGAINST DEFENDANT CITY – 42 U.S.C. § 1983
### *Against the City of New York*

34. Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

35. The acts and omissions described above were carried out pursuant to Defendant City's overlapping customs and practices which were in existence on or about March 11, 2017 and were engaged in with the full knowledge, consent, and cooperation and under the supervisory authority of the City and its agencies the NYPD, DOC, and DCAS, in their capacities as officials pursuant to customs, policies, usages, practices, procedures and rules of the City, all under the supervision of ranking officers of the NYPD, DOC and DCAS.

36. The aforementioned custom and practice of the City includes, but is not limited to, failing to provide accommodation of pre-arraignment detainees who require the use of a wheelchair for mobility.

37. The existence of aforesaid unconstitutional customs and policies may be inferred from repeated occurrences of similar wrongful conduct. The population of New York City includes almost 180,000 individuals with an ambulatory disability, and approximately 95,000 individuals who use wheelchairs, according to the De Blasio administration Commissioner of the Mayor's Office for People with Disabilities, Victor Calise.[1] According to the United States Census Bureau, the population of New York County in 2018 was 19,493,561.[2] In New York County alone, the number of adult arrests from 2009 through 2018 reached well over half a million, or

---

[1] "Accessible NYC: An Annual Report on the State of People Living with Disabilities in New York City by the Mayor's Office for People with Disabilities," see pages 8, 16.

[2] "Quickfacts New York County (Manhattan Borough, New York," United States Census Bureau, available at:
https://www.census.gov/quickfacts/fact/table/newyorkcountymanhattanboroughnewyork,NY

707,049 total.[3] Given the substantial population that relies upon wheelchairs for mobility, as well as the high number of arrests within New York County, the unconstitutional practices described herein constitute a custom and policy of violating the rights of wheelchair reliant detainees transported in defendant City's vehicles and held in precincts maintained by Defendant City and individual defendants.

38. The existence of aforesaid unconstitutional customs and policies may also be inferred from repeated occurrences of similar wrongful conduct, as documented and published by media sources, including:

   a. The Pre-Arraignment Screening Correction Health Services form fails to include any questions regarding disabilities or possible need for accommodation;

   b. James King "A Guide to NYPD's Central Booking: Go for the Urine-Scented Everything; Stay Because They Won't Let You Leave" Village Voice, Oct. 24, 2012. Available at http://www.villagevoice.com/news/a-guide-to-nypds-central-booking-go-for-the-urine-scented-everything-stay-because-they-wont-let-you-leave-6674168;

   c. Samuel Newhouse "Retired Brooklyn Cop Writes Book on Inefficient NYPD" Dec. 23, 2008 Brooklyn Eagle. Available at http://50.56.218.160//archive/category.php?category_id=4&id=25412; ("About a decade ago, Linn said she supervised the midnight shift at Brooklyn Central Booking at a time when conditions there were particularly hazardous and unsanitary. Because of these conditions, officers had to keep vulnerable prisoners at the station house and supervise them one-on-one, she wrote in the book.");

   d. Jen Carlson "An Unexpected Visit to Brooklyn Central Booking" Gothamist, Dec. 27, 2007. Available at http://gothamist.com/2007/12/27/an_unexpected_v.php;

39. The existence of aforesaid unconstitutional customs and policies may be inferred from repeated occurrences of similar wrongful conduct, as documented in the following actions filed against the City:

   i. <u>Cano, et al. v. City, et al.</u>, 13 Civ. 3341 (WFK) (VVP): Plaintiffs allege Brooklyn Central Booking subjects detainees to overcrowding, unsanitary conditions, lack of

---

[3] "Adult Arrests: 2009-2018," Division of Criminal Justice Services, New York State, available at: https://www.criminaljustice.ny.gov/crimnet/ojsa/arrests/NewYork.pdf

11

sleeping space; deprivation of sleep because *inter alia* they were not provided beds, because the lights were on at all times; ususable toilets; sanitation issues with garbage, urine, feces, and garbage left uncleaned on the floor; infestation of rodents and insects; crime due to lack of supervision of detainees; inadequate water and food that cannot be consumed; substantial risk of harm;

ii. Spinner, et al. v. City of New York, et al., 01 Civ. 2715, 01 Civ. 8264, 02 Civ. 2899, 02 Civ. 1039 (E.D.N.Y.): Alleging plaintiffs and numerous other arrestees were held in filthy, disease-ridden, overcrowded jail cells; cells infested with rodents and roaches for years; human feces and urine on the floor; cells contained one toilet to be shared by all detainees with no privacy; lack of clean drinking water; no supervision for violent criminals sharing cells;

iii. Darnell v. City of New York, 15 Civ. 2870 (2d Cir. 2017). The Circuit reviewed the allegations of unconstitutional conditions of confinement at Brooklyn Central Booking and stated, "t]he plaintiffs paint a picture of BCB that is alarming and appalling. The plaintiffs testified that they found the conditions at BCB degrading, humiliating, and emotionally scarring. One plaintiff testified: "I was not treated in a humane manner. I believe if I were a dog, and that if the A.S.P.C.A. was brought in and there was a dog in that cell, that the police officers, whoever were responsible for the treatment of that dog in that cell, that they would be brought up on charges." See Darnell v. Pineiro, 849 F.3d 17, 26 (2d Cir. Feb. 21, 2017).

iv. Narvaez v. City of New York, 16 Civ. 1980 (GBD). Alleging unconstitutional conditions of confinement for pretrial detainees in violation of the ADA and at Brooklyn Detention Center.

## **JURY DEMAND**

40. Plaintiff demands a trial by jury in this action on each and every one of his damage claims.

WHEREFORE, plaintiff demands judgment against the defendants individually and jointly and prays for relief as follows:

I. Award Plaintiff punitive damages in an amount to be determined at trial;

II. Award Plaintiff compensatory damages in an amount to be determined at trial;

III. Award Plaintiff reasonable attorneys fees and costs as authorized pursuant to 42 U.S.C. §§ 1988 and 12205; and

IV. Grant such other further and different relief as to the Court may seem just and proper.

Dated: New York, New York
March 11, 2020

Respectfully submitted,

By: _____
David Rankin
Beldock Levine & Hoffman, LLP
99 Park Avenue, PH/26th Floor
New York, New York 10016
Phone: (212) 277 5825
Email: drankin@blhny.com
*Attorneys for Plaintiff*


Law Office of Michael L. Spiegel
11 Park Place, Suite 914
New York, NY 10007
Phone: (212) 587-8558
Email: MIKESPIEG@aol.com
*Attorneys for Plaintiff*